IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JEREMY GILMORE and DANA
GILMORE,

        Plaintiffs,

    v.

UNION PACIFIC RAILROAD COMPANY,
DENNIS MAGURES, JOHN
PARKER,CAROLYN M. WILL, ANDREW
RIBBING and LEO MARIN and DOES
1-10, inclusive

        Defendants.

_____/

Case No.09-02180-JAM-DAD

<u>ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S
MOTION TO DISMISS AND MOTION TO
STRIKE</u>

This matter comes before the Court on Defendant Union

Pacific's ("Defendant's")Motion to Dismiss the second through

eighth causes of action in Plaintiffs Jeremy Gilmore and Dana

Gilmore's ("Plaintiffs'")First Amended Complaint ("FAC").

Defendant moves to dismiss the causes of action pursuant to

Federal Rule of Civil Procedure 12(b)(6) for failure to state a

claim upon which relief can be granted. Plaintiffs oppose the

1

motion. Defendant also brings a Motion to Strike, pursuant to Federal Rule of Civil Procedure 12(f).[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

As alleged in the FAC, Plaintiffs, who are husband and wife, were both employed by Union Pacific Railroad Company at an engine repair facility in Roseville, California. Plaintiff Jeremy Gilmore ("Jeremy") was a machinist and Plaintiff Dana Gilmore ("Dana") was an electrician. On August 14, 2008, Jeremy was hit and injured by an air compartment door while conducting tests of a locomotive engine. He was hospitalized following the accident, and completed a personal injury report at the request of Defendant. Shortly thereafter, he was cited for violations of various work rules, including allegations that he falsified the extent of his injuries in the injury report. Jeremy was subject to a disciplinary hearing held by Defendant, in which managers Carolyn Will and Dennis Magures acted as hearing officer and fact finder. Carolyn Will thereafter sent Jeremy a letter informing him that he was found guilty of the charges against him and terminated on November 6, 2008.

In conjunction with Defendant's investigation of Jeremy, Dana was questioned by Defendant and accused of dishonesty and insubordination based on her refusal to testify against Jeremy

---

[1]These motions were determined to be suitable for decision without oral argument. E.D. Cal. L.R. 78-230(h).

at his disciplinary hearing. She was then subjected to a disciplinary hearing at which Andrew Ribbing served as hearing officer and fact finder. He later informed Dana that she was terminated on December 22, 2008.

Plaintiffs originally filed suit in Placer Superior Court, alleging violations of the Federal Employers Liability Act ("FELA"), 45 U.S.C. §51 et seq., wrongful discharge, intentional infliction of emotional distress, and invasion of privacy. Plaintiffs seek back pay, general, special and punitive damages, and attorney's fees and costs. Defendant removed the case to District Court based on federal question jurisdiction, and in the alternative, diversity jurisdiction. Defendant also noted in the Notice of Removal that it was not joining the individually named defendants (Dennis Magures, John Parker, Carolyn Will, Leo Marin and Andrew Ribbing) in the removal because allegedly they had not been served and all causes of action against them were barred as a matter of law. Defendant then brought the present Motion to Dismiss and Motion to Strike, in which Defendant also argues for dismissal on behalf of the individually named defendants.

II.   OPINION

A.   Legal Standard

A party may move to dismiss an action for failure to state a claim upon which relief may be granted pursuant to Federal Rule

of Civil Procedure 12(b)(6). In considering a motion to dismiss,
the court must accept the allegations in the complaint as true
and draw all reasonable inferences in favor of the plaintiff.
Sheuer v. Rhodes, 416 U.S. 232, 236 (1975), overruled on other
grounds by Davis v. Sherer, 468 U.S. 183 (1984); Cruz v. Beto,
405 U.S. 319, 322 (1972). Assertions that are mere "legal
conclusions," however, are not entitled to the assumption of
truth. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009), citing
Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007). To survive
a motion to dismiss, a plaintiff needs to plead "enough facts to
state a claim to relief that is plausible on its face." Twombly,
550 U.S. at 570. Dismissal is appropriate where the plaintiff
fails to state a claim supportable by a cognizable legal theory.
Balistreri v. Pacifica Police Dep't, 901 F. 2d 696, 699 (9th
Cir. 1990).

   Upon granting a motion to dismiss, a court has discretion to
allow leave to amend the complaint pursuant to Federal Rule of
Civil Procedure 15(a). "Absent prejudice, or a strong showing of
any [other relevant] factor[], there exists a presumption under
Rule 15(a) in favor of granting leave to amend." Eminence
Capital, L.L.C. v. Aspeon, Inc., 316 F. 3d 1048, 1052 (9th Cir.
2003). "Dismissal with prejudice and without leave to amend is
not appropriate unless it is clear . . . that the complaint
could not be saved by amendment." Id. Accordingly, a court

should grant leave to amend the Complaint unless the futility of amendment warrants dismissing a claim with prejudice.

"Rule 12(f) provides in pertinent part that the Court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. . . Motions to strike are disfavored an infrequently granted. A motion to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation. . . A motion to strike may be used to strike any part of the prayer for relief when the recovery sought is unavailable as a matter of law." Bassett v. Ruggles et al., 2009 WL 2982895 at *24(E.D. Cal. Sept. 14, 2009)(internal citations omitted).

B. Wrongful Discharge, Second Cause of Action

Jeremy alleges that he was wrongfully terminated in violation of public policy. He alleges that he was terminated because Defendant knew he intended to pursue his rights for compensation under FELA, and wished to discourage him from doing so. He alleges that his termination was in violation of the law and policy articulated in California Labor Code Section 132(a) and the Federal Rail Safety Act, 49 U.S.C. Section 20109(a)(4). Defendant argues that this cause of action is preempted by the FRSA, the Railway Labor Act ("RLA") 45 U.S.C. 151 et seq., and

FELA. For the reasons set forth below, Defendant's motion to dismiss this cause of action is DENIED.

1. <u>FRSA Preemption</u>

Defendant argues that the FRSA preempts the claim of wrongful discharge because the FRSA contains an election of remedies clause.  However, as Jeremy notes, he is not suing under the FRSA. He is merely referencing the FRSA as one of the public policies violated by his discharge. Because he is not suing under the FRSA, Defendant's argument that the FRSA constitutes an election of remedies does not apply. Likewise, Defendant's argument that the FRSA does not create a private right of action does not apply. <u>Gonero v. Union Pacific Railroad</u> <u>Company</u>, 2009 WL 3378987 at *6(E.D. Cal. Oct. 19, 2009).  The California Supreme Court has expressly rejected the argument that common law wrongful termination claims may not be "tethered" to federal statutes that lack a private cause of action. <u>Id</u>. at *7, citing <u>Green v. Ralee Engineering Co.</u>, 19 Cal. 4th 66, 87-88 (1998).

Similarly, Defendant argues that the cause of action under California Labor Code Section 132(a) must be dismissed, apparently misunderstanding that Jeremy is not attempting to sue under the Labor Code. Like his reference to the FRSA, the reference to the California Labor Code was to demonstrate the existence of a public policy advancing workplace safety. Section

132(a) declares it a policy of the state that there should be no discrimination against workers who are injured in the scope of their employment.

2. <u>RLA Preemption</u>

Defendant argues that the RLA preempts a wrongful termination claim because adjudication of the claim would require interpreting the collective bargaining agreement ("CBA"). The RLA is the exclusive dispute resolution process for claims that require adjudication of the CBA, because the National Railroad Adjustment Board and the private tribunals authorized by the RLA provide a "mandatory, exclusive, and comprehensive system for resolving [railroad] grievance disputes." <u>Brotherhood of Locomotive Engineers, v. Louisville N.R.,</u> 373 U.S. 33, 38 (1963). Only those disputes that can be classified as "major" or "minor" under the Act are preempted by the RLA. <u>Hawaiian Airlines, Inc. v. Norris</u>, 512 U.S. 246, 252 (1994). Defendant does not contend that Jeremy raises a "major" dispute, rather it contends that Jeremy's wrongful discharge claim is a "minor" dispute. A "minor" dispute involves interpreting or applying an existing CBA. <u>Id</u>. at 253. However, "substantive protections provided by state law, independent of whatever labor agreement might govern, are not pre-empted under the RLA." <u>Id</u>. at 257 (citing <u>Missouri Pacific R. Co. v. Norwood</u>, 283 U.S. 249, 258 (1931).

In deciding whether Jeremy has raised a valid state law claim for wrongful termination that should survive a motion to dismiss, the first step is to determine if he has asserted a public policy capable of supporting such a claim. California recognizes an exception to the at-will employment doctrine, allowing employees fired in violation of fundamental state or federal public policy to sue for tort damages. Gonero, 2009 WL 3378987 at *7 (citing Tameny v. Atlantic Richfield Co., 27 Cal. 3d 167, 172 (1980)). A public policy may support a Tameny claim if it is "(1) delineated in either constitutional or statutory provisions; (2) 'public' in the sense that it inures to the benefit of the public rather than serving merely the interests of the individual; (3)  well established at the time of discharge; and (4) 'substantial' and 'fundamental.' Stevenson v. Superior Court, 16 Cal. 4th 880, 901-02 (1997).

"While the California Labor Code and the FRSA serve to regulate the terms of the employment relationship, they also reflect a public policy in favor of promoting workplace safety." Gonero, 2009 WL 3378987 at *8. California has recognized workplace safety as a fundamental public policy under California Labor Code §6400. Id. at *9 (citing City of Palo Alto v. Service Employees International Union, 77 Cal. App. 4th 327, 336 (2000)). Likewise, in the employee protections section of the FRSA, §20109(a)(4), it is unlawful for an employer to terminate

an employee who notifies the railroad carrier of a work-related injury or illness, as was the case when Jeremy notified Defendant of his injury. In the <u>Gonero</u> case, a case also against Union Pacific similar to the case at bar, plaintiff alleged violations of the employee protections provided by the FRSA in Section 20109. The court held that Union Pacific was expressly bound by the workplace safety provisions of FRSA §20109. The court found that the plaintiff had asserted a valid common law claim of wrongful termination in violation of public policy which the RLA may not preempt. <u>Gonero</u>, 2009 WL 3378987 at *7. The public policy supporting employee workplace safety advanced by the FRSA is a well-established "public" policy, and is "substantial" and "fundamental," thus meeting all the requirements to support a *Tameny* claim. <u>Id</u>. at *8-9.

    The second step in the RLA preemption analysis is to determine whether Jeremy has raised a "minor" dispute which requires interpretation of the CBA. Defendant asserts that Jeremy's common law wrongful discharge claim is not independent of the CBA, because the FAC alleges that the disciplinary procedures and reasons for his termination were false, baseless and pre-textual. As it did in the <u>Gonero</u> case, Defendant cites <u>Bielicke v. Terminal R.R. Ass'n</u>, 30 F. 3d 877 (7th Cir. 1994), in support of this proposition. In <u>Gonero</u>, the Court found that "<u>Bielicke</u> is inapposite" because the source of the right claimed

by plaintiffs in <u>Bielicke</u> was the CBA itself. The plaintiffs'
claims in <u>Bielicke</u> constituted a 'minor' dispute subject to RLA
preemption because the sole inquiry was whether the company
abused its investigatory powers granted by the CBA. On the other
hand, Plaintiff's claims in <u>Gonero</u> alleged that he was fired in
violation of California and federal public policies supporting
workplace and railroad safety. Accordingly, the <u>Gonero</u> court
held that neither of these claims involve rights or duties that
arise solely from the CBA and denied defendant's motion to
dismiss on these grounds. <u>Gonero</u>, 2009 WL 3378987 at *9. The
same result is required in this case.

Though Jeremy's claim describes the disciplinary procedure,
it is not solely based on whether the disciplinary procedure was
properly carried out, but rather whether he was fired for an
unlawful purpose. "The <u>Hawaiian Airlines</u> Court made clear that
'whether the employer's actions make out the element of
discharge under [state] law' was a purely factual question not
preempted by the RLA." <u>Id</u>. (citing <u>Hawaiian Airlines, Inc. v.
Norris</u>, 512 U.S.246, 266 (1994)). Accordingly, Jeremy's claim,
which raises a factual issue of whether his termination was
retaliatory and in violation of public policy, is not preempted
by the RLA.

3. FELA Preemption

    As an alternative basis for dismissal of the wrongful

discharge claim, Defendant argues that the claim is preempted by

FELA. FELA provides a remedy for workers injured by their

employer's or co-workers' negligence, and makes it illegal for

an employer to retaliate against an employee for reporting

information about a workplace injury. 45 U.S.C. §51. A primary

purpose of FELA was to eliminate the traditional defenses to

tort liability that had prevented railroad workers from

recovering for their work-related injuries. Gonero, 2009 WL

3378987 at *10.

    Defendant cites Wildman v. Burlington Northern Railroad

Co., 825 F. 2d 1392, 1395 (9th Cir.) for the proposition that

FELA is the sole exclusive remedy for injured railroad

employees. The court in Wildman notes that FELA is comprehensive

and exclusive with respect to a railroad's liability for

injuries suffered by its employees. FELA does not, however,

authorize injured railroad employees to recover damages for the

aggravation of their injuries resulting from their subsequent

and allegedly wrongful discharge. Gonero, 2009 WL 3378987 at *10

(citing Lewy v. Southern Pacific Transportation Co., 799 F. 2d

1281 (9th Cir.)). Nor does it encompass employees who are

discharged or disciplined because they themselves initiate FELA

actions; the FELA protection extends only to those disciplined

for reporting injury information to others. <u>Lewy</u>, 799 F. 2d at 1293.

Here, the FAC alleges that Jeremy was fired because Defendant knew he intended to bring a FELA claim regarding the injuries he suffered. Jeremy is not attempting to sue for wrongful discharge under FELA; he only alleges a state law tort claim of wrongful termination in violation of public policy. His wrongful discharge claim is not based on Defendant's liability for his injury, it is based on Defendant's decision to unlawfully terminate him. Accordingly, FELA does not preempt the claim.

C. <u>Intentional Infliction of Emotional Distress, Third Cause of Action</u>

Jeremy alleges intentional infliction of emotional distress against Defendant and against the individually named defendants Carolyn Will and Dennis Magures, through whom Defendant acted. Jeremy alleges that he suffered from humiliation, mental anguish and emotional distress as a result of Defendant's, Will and Magures' conduct regarding his alleged wrongful discipline and termination. He alleges their actions were done with malice, fraud, oppression and reckless disregard of his rights.

Defendant first argues that Jeremy's claim of intentional infliction emotional distress is preempted by FELA, but then concedes in its Reply that FELA does not preempt such a claim.

Indeed, FELA does not bar a claim of emotional distress. <u>Gonero</u>, 2009 WL 3378987 at *11. However, Defendant then raises the argument that the claim for intentional infliction of emotional distress is preempted by the RLA, and that RLA preemption constitutes an issue of subject matter jurisdiction. <u>Andrews v. Louisville & N.R. Co</u>., 406 U.S. 320,322 (1972).

A prima facie case of intentional infliction of emotional distress requires proving that Defendant's conduct was outrageous. <u>Saridakis v. United Airlines</u>, 166 F. 3d 1272, 1278 (1999). "Conduct is deemed outrageous if it is so extreme as to exceed all bounds of that usually tolerated in a civilized community." <u>Id</u>. (internal citations omitted). Courts have consistently found that the RLA preempts claims for intentional infliction of emotional distress, because "determining whether an employer's conduct is outrageous requires an interpretation of the CBA, therefore the claim is not independent." <u>Id</u>. (citing <u>Stone v. Writers Guild of America West, Inc.</u>, 101 F. 3d 1312, 1314 (9th Cir. 1996); <u>Grote v. Trans World Airlines, Inc.</u>, 905 F. 2d 1307, 1310 (9th Cir. 1990); <u>Miller v. AT&T Network Systems</u>, 850 F. 2d 543, 550 (9th Cir. 1988)). Because it is preempted by the RLA, the Court does not have subject matter jurisdiction to decide the claim. Accordingly, Defendant's motion to dismiss the third cause of action for intentional infliction of emotional distress is GRANTED WITH PREJUDICE.

D. <u>Wrongful Discharge for Assertion of the Constitutional Right
   to Privacy, Fourth Cause of Action</u>

   Dana alleges that she was fired for two reasons: refusing
to reveal to Defendant information that Defendant believed she
possessed due to her marital relationship with Jeremy, and
refusing Defendant's orders to testify against Jeremy at his
disciplinary hearing. Dana alleges that her termination violated
public policy protecting the marital relationship, including
marital privacy and loyalty. Defendant argues that her claim is
preempted by the RLA because determining whether her supervisors
had the right to compel her to testify or answer questions about
her husband is an issue that can only be resolved by
interpreting the CBA.

   However, as with Jeremy's claim for wrongful termination,
the Court must examine whether the claim alleges an established
public policy from which Dana can allege substantive protections
provided by state law independent of whatever labor agreement
might govern, or whether the claim raises only a minor dispute
requiring interpretation and application of the CBA.

   Article 1, Section 1 of the California Constitution states
that privacy is an inalienable right. This constitutional
privacy provision provides protection against both governmental

and non-governmental intrusion. <u>Semore v. Pool</u>, 217 Cal. App. 3d 1087, 1094 (1990).

"While an employee sacrifices some privacy rights when he enters the workplace, . . .the right to privacy has been recognized as a fundamental interest of our society." <u>Id</u>. at 1096. The assertion of a constitutional right to privacy is the assertion of a fundamental principle of public policy which is sufficient to state a cause of action for wrongful termination. <u>Id</u>. at 1097.

Here, Dana has asserted a valid cause of wrongful discharge in violation of public policy. There is an established public policy that affirms a right to privacy, and she has alleged a reasonable expectation of privacy that was violated by Defendant's conduct. Her claim is not one that invokes the "minor" dispute of what authority a hearing officer may have had pursuant to the CBA, but rather the substantive issue of whether an employer may lawfully terminate an employee who refuses to give up her marital privacy rights to divulge private information about her husband.

The right to privacy is not absolute, and must be balanced by an employer's need to regulate the conduct of its employees at work. <u>Id</u>. at 1098. However, this case must proceed to develop the facts needed to apply this balancing test. The factual issue of whether Defendant had some compelling need to justify this

intrusion into her privacy is not appropriate for resolution at the motion to dismiss stage.

Lastly, Defendant also argues that as with Jeremy's wrongful termination claim, this claim is preempted by FELA. However, FELA does not apply here because Dana alleges no physical injury, nor is she alleging retaliation for reporting an injury, nor even trying to bring a claim under FELA. Accordingly, Defendant's motion to dismiss the fourth cause of action is DENIED.

E. Wrongful Discharge Due to Marital Discrimination, Fifth Cause of Action

Dana also alleges that she was wrongfully terminated in violation of public policy against marital discrimination. The public policy identified by Dana in the FAC is the statute against marital discrimination in employment contained in the California Government Code Section 12940(a).

Defendant argues that marital discrimination cases fall into two categories: status cases (where a person is discriminated against for being married, single, etc) and conduit cases (where the discrimination is based on the identity of who the person is married to). Chen v. County of Orange, 96 Cal. App. 4th 926, 939-943 (2002). Conduit cases are further divided between those in which the animus is unlawful (such as

race discrimination) and those in which the animus is not unlawful (such as political animus). Id. "Conduit cases not based on some wrongful animus. . . have been universally met with rejection as valid marital status discrimination claims. Perhaps the best explanation for that is this: In such cases, the marriage *qua* marriage is irrelevant to the adverse action taken by the employer. What the employer really cares about is the substantive relationship between the plaintiff and someone else, be he or she spouse, romantic partner, or even 'just a friend.'" Id.

In her Opposition Dana argues that her case is a conduit case, where the illegal animus is, "Union Pacific's wrongful termination of Dana in violation of public policy and because of the unconstitutional violation of Dana's right to marital privacy, to be loyal to her husband and maintain the confidentiality of marital communications and to further the effects of Union Pacific's illegal termination of her husband." Opposition, P 22. Defendant argues that this does not constitute illegal animus, as it is more analogous to the "political" animus rejected by the court in Chen. In Chen, the Court did not find that the plaintiff had suffered marital discrimination, finding instead that she was fired because her husband was "on the outs" with the defendant. The court found this to be a

political animus conduit case and not and unlawful animus conduit case. <u>Chen</u>, 96 Cal. App. 4th at 944.

Dana attempts to distinguish her situation from that of the plaintiff in <u>Chen</u>, alleging that Jeremy was not "on the outs" with Defendant. However, she fails to allege an unlawful animus other than the convoluted "animus" quoted above from the Opposition. Accordingly, Defendant's motion to dismiss the cause of action for marital status discrimination is GRANTED, however Plaintiffs are given leave to amend the claim.

F. <u>Intentional Infliction of Emotional Distress, Sixth Cause of Action</u>

Dana alleges intentional infliction of emotional distress against Defendant and against the individually named defendants Dennis Magures, John Parker, Leo Marin and Andrew Ribbing, through whom Defendant acted. Her claim stems from their alleged insistence that she provide specific information about Jeremy (information that she alleges would have been false) and that she testify against Jeremy at his disciplinary hearing. Again, as with Jeremy's claim for intentional infliction of emotional distress, whether this conduct constituted "outrageous" conduct on the part of the Defendant and the individually named supervisors requires the interpretation and application of the CBA. Accordingly, this claim is preempted by the RLA and

defendant's motion to dismiss the claim is GRANTED WITH
PREJUDICE.


G. <u>Invasion of Privacy, Seventh Cause of Action</u>

     Plaintiffs allege invasion of privacy against Defendant and
individually named defendants John Parker, Dennis Magures, Leo
Marin and Andrew Ribbing based on Defendants' insistence that
Dana answer questions regarding her husband's injuries and
testify against him at his disciplinary hearing. Article 1,
Section 1 of the California Constitution states that, "All
people are by nature free and independent and have inalienable
rights. Among these are enjoying and defending life and liberty,
acquiring, possessing, and protecting property, and pursuing and
obtaining safety, happiness and privacy." To bring a claim for
invasion of privacy, a plaintiff must "establish each of the
following: (1) a legally protected privacy interest; (2) a
reasonable expectation of privacy in the circumstances; and (3)
conduct by defendant constituting a serious invasion of
privacy." <u>Hill v. National Collegiate Athletic Assn.</u>, 7 Cal.
4th 1, 39-40.

     The legally protected privacy interest asserted by
Plaintiffs is the right to autonomy privacy, recognized by the
court in <u>Hill</u>. ("Legally recognized privacy interests are
generally of two classes: (1) interests in precluding the

dissemination or misuse of sensitive and confidential information ("informational privacy"); and (2) interest in making intimate personal decisions or conducting personal activities without observation, intrusion or interference ("autonomy privacy")).  Plaintiffs allege that they had a reasonable expectation of privacy in whatever knowledge Dana had regarding her husband's physical injuries, and that they had a reasonable expectation that they would not be compelled by Defendants to disclose such private information about each other known only because of their marital relationship. The Supreme Court has recognized the intimacy of the marital relationship, and the bilateral loyalty which it promotes, (see e.g. Griswold v. Connecticut, 381 U.S. 479, 486 (1965)). Thus, Plaintiffs allege that Defendants' conduct in attempting to force them to violate this recognized loyalty and intimacy constituted a serious invasion of privacy.

"Whether a legally recognized privacy interest is present in a given case is a question of law to be decided by the court. . . . Whether plaintiff had a reasonable expectation of privacy in the circumstances and whether defendant's conduct constituted a serious invasion of privacy are mixed questions of law and fact." Id. at 39-40 (internal citations omitted). The allegations made by Plaintiffs are sufficient at this stage to raise the possibility of an invasion of privacy claim.

Plaintiffs have alleged marital privacy, a legally recognized privacy interest. Further factual development is needed to determine the mixed question of law and fact regarding circumstances and conduct, thus Defendant's motion to dismiss the invasion of privacy claim is DENIED.

## H. Intentional Infliction of Emotional Distress, Eighth Cause of Action

Lastly, Plaintiffs allege intentional infliction of emotional distress against Defendant and John Parker, Dennis Magures, Leo Marin and Andrew Ribbing for their roles in all of the above causes of action. However, like the other causes of action for intentional infliction of emotional distress, this claim fails because it requires interpretation of the CBA and is therefore preempted by the RLA. Accordingly, Defendant's motion to dismiss this claim is GRANTED WITH PREJUDICE.

## I. Fraudulent Joinder

Plaintiffs have brought claims of intentional infliction of emotional distress and invasion of privacy against the individually named defendants for their roles in Plaintiffs' firing. Defendant argues that the individually named defendants in the suit, Dennis Magures, John Parker, Carolyn M. Will, Andrew Ribbing and Leo Marin, all supervisors of Plaintiffs,

should be dismissed from the suit as fraudulently joined because

of limits on supervisory liability for intentional infliction of

emotional distress and invasion of privacy. None of the

individually named defendants have been served with the FAC and

therefore are not yet before this Court. Accordingly,

defendant's motion is premature and the court declines to reach

the issue of supervisory liability. The Court has dismissed all

the intentional infliction of emotional distress claims as

preempted by the RLA and therefore the only possible cause of

action remaining against Magures, Parker, Leo and Marin is the

seventh for invasion of privacy.  Defendant Carolyn Will is

dismissed from this lawsuit.

Plaintiffs are ordered to file and serve their Second

Amended Complaint on all named defendants within twenty (20)

days from the date of this Order or dismiss the remaining

individually named defendants.


J. <u>Motion to Strike</u>

Defendant moves to strike from the FAC Plaintiff's request

for attorney's fees, on the grounds that fees are not

recoverable in actions for wrongful discharge in violation of

public policy. Plaintiffs do not address the Motion to Strike in

the Opposition. Nevertheless, as explained below, this motion is

DENIED at this time.

"In actions involving state law claims, federal courts apply the law of the forum state to determine whether a party is entitled to attorney's fees, unless it conflicts with a valid federal statute or procedural rule." Gonero, 2009 WL 3378987 at *11 (citing MRO Communications Inc. v. AT&T Co., 197 F. 3d 1276, 1282 (9th Cir. 1999)).

Defendant argues that the only claim which provides for statutory attorney's fees is the claim for marital status discrimination, which Defendant argues does not survive the motion to dismiss stage. However, attorney's fees are allowable as costs under Section 1032 of the California Code of Civil Procedure when they are authorized by either contract, statute, or law. Gonero, 2009 WL 3378987 at *11. Furthermore, California Code of Civil Procedure Section 1021.5 provides for fees to be awarded when the prevailing party was enforcing a right affecting the public interest. Id. at *12. Because a trial court has considerable discretion in deciding whether fees are appropriate, the claim for fees cannot be eliminated as a matter of law. Id. Given the similarity of issues in the Gonero case, it is also possible that fees could be awarded in this case, and they cannot be ruled out as a matter of law at this early stage. Accordingly, Defendant's motion to strike the request for fees from the Prayer for Relief is DENIED.

III. ORDER

For the reasons set forth above, Defendant's Motion to Dismiss is GRANTED IN PART, and DENIED IN PART. Defendant's Motion to Strike is DENIED and Defendant's request that the Court find that the individually named defendants are fraudulently joined is DENIED.

More specifically the Court hereby orders that:

1. The third, sixth, and eighth causes of action are DISMISSED WITH PREJUDICE;

2. The fifth cause of action is DISMISSED WITHOUT PREJUDICE;

3. Individually named defendant Carolyn Will is dismissed from this action;

4. Plaintiffs file and serve their Second Amended Complaint on all Defendants within twenty (20) days of the date of this Order or file a dismissal of the four remaining individually named defendants.

IT IS SO ORDERED.

Dated: December 1, 2009

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE