IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY GILMORE and DANA GILMORE, | |
| Plaintiffs, | CIV No. S-09-2180 KJM DAD |
| vs. | |
| UNION PACIFIC RAILROAD COMPANY, et al., | ORDER |
| Defendants. | |

I. Background

Plaintiff Jeremy Gilmore alleges, among other things, that he was terminated from his job at Union Pacific Railroad (UP) following a workplace injury. He alleges the termination was based on a general policy of retaliation against injured workers who UP believes will pursue a claim for damages for their injuries. He further alleges the termination also resulted from UP managers receiving bonuses in part based on their safety records. Plaintiff Dana Gilmore alleges, among other things, that she was terminated from UP because she did not provide information about the extent of Jeremy's injuries. Both plaintiffs allege that these discharges violated public policy.

The parties dispute the standard for evaluating these claims, as well as the admissibility of several categories of evidence. UP argues the correct standard is articulated in

1

*Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167 (1980).  Plaintiffs argue the right standard derives from *Cotran v. Rollins Hudig Hall Intl., Inc*., 17 Cal.4th 93 (1998).  For the reasons set forth below, the court adopts the *Tameny* standard.

In addition, UP argues this court must determine that Dana has sufficiently demonstrated the offensiveness of the invasion of the right to marital privacy before her claim can go to the jury.  As discussed below, the court finds Dana's privacy claim may go to the jury; the court declines to make a threshold determination of offensiveness.

Resolution of these issues resolves several pending motions in limine.

II.  *Tameny* or *Cotran*

In the course of resolving the parties' cross-motions for summary judgment, this court examined but did not ultimately determine the proper standard for evaluating the discharge claims.

In *Tameny*, the California Supreme Court explored the nature of the remedy when an employer has fired an at will employee and the employee claims the discharge followed his refusal to participate in a price fixing scheme.  In that case, the employee alleged he was fired after such a refusal.  *Tameny*, 27 Cal.3d at 169.  The court concluded that "when an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions."  *Id*. at 170.

In subsequent decisions, the California Supreme Court has explored the contours of the *Tameny* doctrine.  In *Gantt v. Sentry Ins*., 1 Cal. 4th 1083, 1090 (1992), *overruled on other grounds by Green v. Ralee Eng. Co.,* 19 Cal.4th 66, 80 n.6 (1998), the Court said that "the policy in question must involve a matter that affects society at large rather than a purely personal or proprietary interest of the plaintiff or employer."  In *Stevenson v. Superior Court*, 16 Cal.4th 880, 894 (1997), the court developed a four part test for determining whether a particular policy will support a discharge claim: the policy must be "(1) delineated in either constitutional or

statutory provisions; (2) 'public' in the sense that it 'inures to the benefit of the public' rather than serving merely the interests of the individual; (3) well established at the time of the discharge; and (4) substantial and fundamental." And in *Green*, 19 Cal.4th at 87-88, the Court recognized that the policy underlying a discharge claim may be based in federal statutory or administrative law.

Plaintiffs urge that the proper standard is not *Tameny*, but rather that developed in *Cotran*. In that case the California Supreme Court held that when an employee hired under an implied agreement not to be discharged except for good cause is fired for misconduct, a jury considering a suit stemming from the discharge must determine whether "the factual basis on which the employer concluded a dischargeable act had been committed was reached honestly, after an appropriate investigation and for reasons that are not arbitrary or pretextual." Cotran, 17 Cal.4th at 107. At least one California Court of Appeal has applied the *Cotran* standard to evaluate a plaintiff's claim that his discharge violated public policy because it was racially motivated. *Nazir v. United Airlines*, 178 Cal.App.4th 243, 271 (2009).

In plaintiffs' view, because *Cotran* is the proper standard, they may explore the adequacy of UP's investigation preceding their discharge as well as any and all irregularities in the disciplinary hearings that preceded their terminations. In defendants' view, *Tameny* is the proper standard and does not require an examination of the investigation and hearing leading to the discharges.

Other cases beside *Nazir* have used the *Cotran* standard or *Cotran* "good cause" language when evaluating the discharge of an at-will employee. *See, e.g., London v. Sears, Roebuck and Co.*, 619 F.Supp.2d 854, 862 (N.D. Cal. 2009), *aff'd*, 2011 WL 5562734 (9th Cir. Nov. 16, 2011) (unpublished); *Grant-Burton v. Covenant Care, Inc*., 99 Cal.App.4th 1361 (2002) (in a *Tameny* case, court also discussed good cause for the termination). Even so, this court declines to import the *Cotran* analytical framework into a *Tameny* discharge. The California Supreme Court was clear that its analysis in *Cotran* stemmed from the implied

agreement that the employee would not be fired absent good cause. *Cotran*, 17 Cal.4th at 95; *see also Halvorsen v. Aramark Uniform Services*, 65 Cal.App.4th 1383, 1391 (1998) ("*Cotran*, however applies only to cases in which an employee is under 'an *implied* agreement not to be dismissed except for good cause.'" (emphasis in original)).  The California Supreme Court also was clear that a jury considering such a claim should not determine whether the employee in fact committed the misconduct that led to his termination, but rather whether the employer had a reasonable basis for its decision. *Cotran*, 17 Cal.4th at 96.  The Court said that in evaluating whether the employer acted reasonably, a jury should consider whether the employer made the decision to terminate only after an appropriate investigation and not for arbitrary or pretextual reasons. *Id*. at 107.

A *Tameny* claim, in contrast, is an exception to the general rule that an employer may discharge an "at will" employee for any reason or for no reason.  In *Tameny*, the California Supreme Court found that an at-will employee could bring a tort action for a discharge that violated public policy. *Tameny*, 27 Cal.3d at 170.  This court declines to import standards developed for evaluating the breach of an implied in fact employment contract into a tort action for discharge in violation of public policy, and adopts the *Tameny* standard as applicable to this case.[1]  Thus there is no need for UP to show that it reached its determination "honestly, after an appropriate investigation."

III. Evidence Concerning The Investigation And Hearing Procedures

Plaintiffs argue that even under *Tameny*, they are entitled to introduce evidence of shortcomings in the investigation and problems with the hearings as proof that the stated reasons for Jeremy's and Dana's discharges were pretextual.  One way to do this is by showing an insufficient investigation. *Mitri v. Walgreens*, 2011 WL 2181387, at *13 (E.D. Cal. June 3, 2011) (failure of company to follow its own procedures is evidence of pretext); *Johnson v.*

---

[1] At argument on the motions in limine, plaintiffs' counsel acknowledged he was not alleging that either termination breached an employment contract.

4

1 *United Cerebral Palsy Foundation*, 173 Cal.App.4th 740, 756 (2009); *see also Hysten v.
2 Burlington Northern Santa Fe Railway Co*., 372 F.Supp.2d 1246, 1255-56 (pretext may be
3 shown "through disturbing procedural irregularities, including 'evidence that defendant acted
4 contrary to an unwritten policy or contrary to company practice when making the adverse
5 employment decision affecting the plaintiff'").

6       UP counters that plaintiffs cannot attack the investigation and hearing without
7 running afoul of the Railway Labor Act's (RLA) preemption of such claims.  UP reasons that
8 because the investigation and hearing procedures are defined and governed by the Collective
9 Bargaining Act (CBA), the  exclusive way to challenge them is through the RLA hearing and
10 appeal procedures culminating in a determination by the National Railroad Adjustment Board,
11 also established by the RLA.  *Brotherhood of Locomotive Engineers v. Louisville N.R.*, 373 U.S.
12 33, 38 (1963) (the RLA provides a "mandatory, exclusive, and comprehensive system for
13 resolving [railroad] grievance disputes"); *Union Pacific Railroad v. Price*, 360 U.S. 601, 617
14 (1959) (discharged employee may not litigate validity of discharge in common-law action after
15 failing to sustain his grievance before the Board).  When the resolution of an issue depends on an
16 interpretation or application of a CBA, it is a so-called "minor" dispute, preempted by the RLA.
17 UP argues that if needed as part of its defense, it would show that it followed the procedures
18 authorized by the CBA, which would then require this court to interpret the CBA to determine
19 whether UP complied with it.

20       The United States Supreme Court has recognized, however, that "not every
21 dispute concerning employment, or tangentially involving a provision of a collective-bargaining
22 agreement is pre-empted . . . ." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985).
23 Instead, a claim is preempted when the "evaluation of the tort claim is inextricably intertwined
24 with consideration of the terms of the labor contract." *Id*. at 213 (interpreting the Labor
25 Management Relations Act (LMRA)).  So long as a state law claim "can be resolved without
26 interpreting the agreement itself, the claim is 'independent' of the agreement for [LMRA] § 301

5

preemption purposes." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 410 (1988). LMRA preemption principles inform the resolution of RLA preemption questions. *Espinal v. Northwest Airlines*, 90 F.3d 1452 (9th Cir. 1996).

In *Lingle*, the plaintiff was discharged for filing a false claim for worker's compensation. She pursued a grievance through the CBA governing her plant, which protected workers from discharge except for just cause. The arbitrator ruled in her favor and ordered her reinstated. She also brought suit in Illinois state court, alleging she was discharged for exercising her rights under Illinois worker's compensation laws. *Lingle*, 486 U.S. at 402-03. The district court and the Seventh Circuit ruled that her claim was preempted by the LMRA.

The Supreme Court reversed. It recognized that the Illinois cause of action for retaliatory discharge required a court to resolve

> purely factual questions pertain[ing] to the conduct of the employee and the motivation of the employer. Neither of the elements requires a court to interpret any term of the collective-bargaining agreement. To defend against a retaliatory discharge claim an employer must show that it had a non-retaliatory reason for the discharge; this purely factual inquiry likewise does not turn on the meaning of any provision of the collective-bargaining agreement. Thus the state-law remedy is 'independent' of the collective-bargaining agreement. . . .

*Id*. at 407 (internal citations omitted). The Court addressed the Court of Appeals' concern that the lower court would consider the same issue as the arbitration board and undertake the same analysis:

> We agree with the court's explanation that the state-law analysis might well involve attention to the same factual considerations as the contractual determination of whether Lingle was fired for just cause. But we disagree with the court's conclusion that such parallelism renders the state-law analysis dependent upon the contractual analysis. . . . . [E]ven if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement. . . .

*Id*. at 408-10.

6

In *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246 (1994), the Court returned to preemption of state law claims, but this time in an RLA case. In that case, Norris, an aircraft mechanic who refused to certify that a particular repair was performed in a satisfactory manner, was suspended and then reported his concerns to the FAA. At a grievance hearing under the CBA, he was terminated for insubordination, which constituted good cause. He filed suit alleging that he was wrongfully terminated in violation of public policy. *Id*. at 249-50. Hawaiian Airlines (HAL) removed the case to federal court and sought to dismiss his claim as preempted by the RLA.

The Court noted that "the RLA's mechanism for resolving minor disputes does not pre-empt causes of action to enforce rights that are independent of the CBA." *Id*. at 256. It continued that the CBA was not the only source of Norris's right not to be discharged wrongfully and that "the 'only source' respondent asserts . . . is state tort law. Wholly apart from the CBA, petitioners had a state-law obligation not to fire respondent in violation of public-policy . . . ." *Id*. at 259. Norris's obligation to pursue a grievance did not relieve HAL of this duty. *Id*. at 258. The Court relied on *Lingle* in concluding that the RLA did not pre-empt Norris's claim, even though the CBA might "'be consulted in the course of the state-law litigation. . . .'" *Id*. at 261 n.8 (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994)).

The Ninth Circuit has established a two part test to determine whether a claim is preempted under the RLA: (1) Does the cause of action involve a right conferred upon the employee by state law, not by a CBA? (2) If the right exists independently of the CBA, is it nevertheless "'substantially dependent on analysis of a collective-bargaining agreement?'" *Burnside v. Kiewit Pacific Corp*., 491 F.3d 1053, 1060 (9th Cir. 2007) (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987)).[2]

---

[2] There are cases suggesting that a defense based on the CBA might not be enough "to render the dispute minor and therefore subject to the RLA's dispute resolution mechanism." *See, e.g.*, *Saridakis v. United Airlines*, 166 F.3d 1272, 1277 (9th Cir. 1998). Because the cases do not engage in an in-depth analysis of the issue, the court does not rely on them in reaching its

Courts generally have found claims of discharge in violation of public policy to be based on rights conferred by state law. *Lingle*, 486 U.S. at 402; *Saridakis v. United Airlines*, 166 F.3d 1272, 1278 (9th Cir. 1998) (wrongful discharge based on disability discrimination); *Espinal*, 90 F.3d at 1457 (same); *McCann v. Soo Line Railroad Company*, 2002 WL 31045383, at *6 (N.D. Ill. Sept. 11, 2002) (retaliatory discharge for filing FELA action). Nor is the right substantially dependent on an analysis of the CBA. In this case, then, UP had an obligation not to discharge plaintiffs in violation of public policy; plaintiffs are not prevented by the CBA from presenting the same facts that the hearing officers considered and arguing that the discharges were improper under state law.

Plaintiffs have made clear that they intend to explore what they perceive to be the inadequacies of the investigation and the hearing as evidence of pretext, though they continue to claim they do not dispute that the investigations and hearings complied with the CBA.[3] UP argues that plaintiffs cannot, consistent with the RLA/LMRA preemption cases, attack the fairness of the hearing process. *See Tomaso v. Pan American World Airways, Inc.*, 43 Cal.3d 517 (1987) (suit based in part on course of investigation of theft; "reasonableness of the investigation and hearings was a question subject to agreement's grievance and arbitration provisions" and so attack on things happening during that process was barred under federal labor law).[4]

/////

---

conclusion.

[3] At hearing plaintiffs' counsel said he was not disputing that the investigation comported with the CBA, but also argued that everything that happened at the hearing – the bias of decisionmaker, the lack of independent witnesses, the failure to consult a doctor – was fair game.

[4] Although UP made a motion to dismiss based on RLA preemption, the court found that Jeremy's discharge claim was not preempted. Even though Jeremy mentioned the disciplinary procedures, the claim was "not solely based on whether the disciplinary procedure was properly carried out, but rather whether he was fired for an unlawful purpose." ECF No. 17 at 10. UP did not seek summary judgment on an RLA preemption claim.

Considering all of the above, this court rejects plaintiffs' attempt to relitigate the investigation and hearing in the guise of establishing pretext. First, even though *Lingle* and *Norris* recognized that parallel consideration of factual claims underlying the discharge does not necessarily implicate the CBA, the cases did not address, much less endorse, a parallel consideration of the procedures leading to the discharge. Second, because the investigation and hearing were limited to establishing good cause, they are not relevant to a pretext analysis even though the facts leading to the discharge and considered at the hearing are relevant to both discharge claims. *Compare Parker v. American Airlines, Inc*., 516 F.Supp.2d 632 (N.D. Tex. 2007) ("the fact that American may have acted completely within the bounds of the CBA is irrelevant if its motivation to apply the relevant provisions of the CBA was Parker's filing of a worker's compensation claim"). To show pretext, plaintiffs must present evidence suggesting that UP did not believe the reason it gave for plaintiffs' discharge. *See Hobbs v. City of Chicago*, 573 F.3d 454, 461 (7th Cir. 2009) (pretext is a phony reason for some action); *Kouvchinov v. Parametric Technology Corp*., 537 F.3d 62, 67 (1st Cir. 2008) (in assessing pretext, focus is on the mindset of the actual decisionmaker; pretext means deceit used to cover one's tracks); *Argo v. Blue Cross and Blue Shield of Kansas*, 452 F.3d 1193 (10th Cir. 2006) (to show pretext, a plaintiff must produce evidence of weaknesses, implausibilities, inconsistencies or contradictions in the employer's proffered reason for discharge so that a factfinder could find the latter unworthy of credence). That UP followed procedures under the CBA in pursuit of its showing of good cause does not show it was trying to mask the real reason for the discharge, unless there was an obligation to undertake a more thorough investigation or a different kind of hearing. Thus, in the context of the record before the court, plaintiffs' proffered evidence of procedural irregularities is not relevant to their showing of pretext. In the same vein, UP's proffered

/////

/////

1  evidence that the Public Law Board[5] upheld the discharge is similarly not relevant to its motive
2  at the time it discharged Dana and Jeremy.

3  To the extent plaintiffs seek to present evidence of UP's failure to make the sort
4  of investigation they deem proper, even if not compelled by the CBA, they suggest that the
5  claims are intertwined with the CBA.  *See Monroe v. Missouri Pacific Railroad Co.*, 115 F.3d
6  514 (7th Cir. 1997) (claim that plaintiff was fired to interfere with potential FELA action
7  preempted when he questioned the propriety of the disciplinary hearing and asserted that the
8  railroad had not asked for a medical examination, provided for in CBA); *Weathersby v. Union
9  Pacific Railroad Co.*, 2003 WL 22038584, at *4 (N.D. Ill. Aug. 28, 2003).  As noted, this
10 evidence is not relevant to pretext and its presentation is preempted.

11 IV.  Dana's Claims

12 As noted, both Jeremy and Dana claim their discharges violated public policy, but
13 for different reasons; as such, the same general analysis as set forth above applies.  Whether
14 Dana has any grounds to make a pretext argument, UP concedes it terminated Dana for
15 disloyalty and the disloyalty stemmed from her failure to provide information about Jeremy.
16 Dana argues she was discharged because she refused to provide information protected by her
17 California constitutional right to marital privacy.  The parties dispute whether she can present
18 evidence about alleged irregularities in the manner in which the hearing officer, Ribbing, applied
19 his signature to the decision to terminate her.  (ECF No. 268.)  To the extent Dana seeks to offer
20 evidence that Ribbing did not believe there was good cause to terminate her, it is not relevant, as
21 it relates to the good cause standard of the CBA.  Moreover, to the extent that Dana seeks to
22 show pretext through irregularities in the proceedings, the evidence is not relevant.  Because that
23 /////

---

[5] This is a special board of adjustment, which resolves disputes that are otherwise referred to the National Railroad Adjustment Board.  *Employees Protective Ass'n v. Norfolk & Western Railway Co.,* 511 F.2d 1040, 1043-44 (4th Cir. 1975).

10

evidence is not relevant, UP's proffer of countervailing evidence that Ribbing authorized his signature is similarly not relevant.

UP argues that before Dana's claims go to the jury, this court must determine whether Dana had a right to privacy in marital communications and whether she exercised it by refusing to disclose protected information. It also argues that this court must make a preliminary finding of offensiveness.

Under Article 1, Section 1 of the California Constitution,

> [a]ll people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy.

This provision protects against governmental and private intrusion, as a prior decision in this case noted. *Semore v. Pool*, 217 Cal.App.3d 1087, 1094 (1990); *Gilmore v. Union Pacific Railroad*, 2009 WL 4705427, at *6 (E.D. Cal. Dec. 2, 2009).

In *Hill v. National Collegiate Athletic Assn.*, 7 Cal.4th 1 (1994), the California Supreme Court examined the nature of a cause of action for violation of the constitutional right to privacy:

> [A] plaintiff alleging an invasion of privacy in violation of the state constitutional right to privacy must establish each of the following: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy.

*Id*. at 39-40. The first element raises a question of law; the last two elements raise mixed questions of law and fact. *Id*. at 40. "If the undisputed material facts show no reasonable expectation of privacy or an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law." *Id*. A defendant may prevail by negating any of these elements, or by demonstrating, as an affirmative defense, "that the invasion of privacy is justified because it substantively furthers one or more countervailing interests." *Id.* In the face of such a showing, a plaintiff may show that there are "feasible and effective alternatives" that meet

defendant's interest, but which have a lesser impact on privacy. *Id.* California's recognition of the marital communications privilege, designed "to encourage confidences between spouses for the benefit of the marital relationship," *People v. Johnson*, 233 Cal.App.3d 425, 437 (1991), suggests that society accepts privacy in marital communications as reasonable. *See* Cal. Evid. Code § 980; *see Ortiz v. Los Angeles Police Relief Assn., Inc*., 98 Cal.App.4th 1288, 1304 (a reasonable expectation of privacy is an objective entitlement based on accepted community norms); *Pettus v. Cole*, 49 Cal.App.4th 402, 442 (1996) ("it is reasonable for employees to expect that details of their personal lives and thoughts will be shielded from scrutiny by their employers"). Based on the California Constitution and California case law, the court finds that Dana had a right of marital privacy sufficient to send her claim to the jury. The court similarly finds that by not providing information to UP despite its policies on loyalty and dishonesty, she sufficiently asserted her right to entitle her to a jury determination of the issues presented.

UP also argues that this court must make a preliminary finding of "offensiveness" of the invasion of the right. It relies on *Miller v. National Broadcasting Co*., 187 Cal.App.3d 1463, 1482 (1986), which discusses the necessity that an invasion of privacy be "highly offensive." *Miller*, though, is a very different situation: TV crews followed paramedics into plaintiff's home and filmed their actions in attempting to revive her husband, which prompted the wife's bringing a claim for the tort of intrusion, a species of invasion of privacy. California recognizes four categories of common law invasions of privacy, which generally require a showing of offensiveness. *See Forsher v. Bugliosi*, 26 Cal.3d 792, 808-09 (1980); *Grant v. United States*, 2011 WL 2367656 (E.D. Cal. June 9, 2011), *adopted by* 2011 WL 2967323 (E.D. Cal. Nov. 15, 2011). California also recognizes a claim for a violation of the constitutional right to privacy, which does not require a showing of offensiveness, as noted above. *Hill*, 7 Cal. 4th at 20. Because Dana has not brought a tort action for violation of her privacy, this court need not make a determination of offensiveness.

/////

Based on the above, IT IS THEREFORE ORDERED that:

1. Plaintiff's motion in limine one (ECF No. 268) is granted.

2. Plaintiff's motion in limine twenty-seven (ECF No. 274) is granted, subject to the limitation that no evidence about the manner in which Ribbing's signature was placed on the termination letter will be admitted.

3. Defendant's motion in limine twenty-one (ECF No. 309) is granted.

DATED: March 8, 2012.

_____
UNITED STATES DISTRICT JUDGE